# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GUY COFFMAN,<br><br>                     Plaintiff,<br><br>-against-<br><br>LORAL SPACE & COMMUNICATIONS, INC., MARK H. RACHESKY, MICHAEL B. TARGOFF, JOHN D. HARKEY JR., ARTHUR L. SIMON, JOHN P. STENBIT, and JANET T. YEUNG,<br><br>                     Defendants. | CASE NO.: _____<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Guy Coffman ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Loral Space & Communications, Inc. ("Loral Space" or the "Company") and members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Loral Space, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and for breaching their fiduciary duty of candor. Plaintiff's claims arise in connection with the proposed merger between the Company and Telesat Corporation ("Telesat") and its subsidiaries (the "Proposed Transaction").

1

2. On November 24, 2020, Loral Space entered into an Agreement and Plan of Merger with Telesat (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Telesat will merge into Loral Space and each share of Loral Space common stock Loral stockholders not affiliated with the funds managed by MHR Fund Management LLC ("MHR Funds") will beneficially own 26.1% of the economic interests in combined company, with the MHR Funds, Public Sector Pension Investment Board ("PSP Investments") and management shareholders of Telesat beneficially owning the remaining 36.6%, 36.7% and 0.7%, respectively, of the economic interests in the combined company (the "Exchange Ratio").

3. On April 26, 2021, in order to convince Loral Space's public common stockholders to vote in favor of the merger, the Board authorized the filing of a materially incomplete and misleading Form F-4 Registration Statement (the "Registration Statement") with the SEC. The Registration Statement contains material omissions concerning: (i) the financial projections for Loral Space, (ii) the valuation analyses performed by the Company's financial advisor, LionTree Advisors LLC ("LionTree"); (iii) the conflicts and compensation to be received by the Company's other financial advisor, Credit Suisse Securities (USA) LLC ("Credit Suisse") for its role in the Proposed Transaction; and (iv) the post-merger ownership structure.

4. The shareholder vote will be scheduled in the coming weeks as Telesat and Loral Space expect that the merger will close in the second or third quarter of 2021 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the Shareholder Vote so they can properly determine whether to vote for or against the Proposed Transaction.

5. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and

Delaware State law. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Loral Space's public common stockholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' misconduct.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

9. This Court also has jurisdiction over the duty of candor claim pursuant to 28 U.S.C. § 1367.

10. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

11. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact

business in this District. Indeed, the Company maintains its business address in this District, its financial and legal advisors are headquartered in this District, and its stock trades on the Nasdaq which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

12. Plaintiff has maintained shares of Loral Space common stock at all relevant times.

13. Defendant Loral Space & Communications, Inc. is incorporated under the laws of Delaware with its principal executive offices located at 600 Fifth Ave, 16th Floor, New York, NY, 10020. The Company's common stock trades on the Nasdaq under the ticker symbol "LORL".

14. Individual Defendant Mark H. Rachesky is, and has been at all relevant times, the former Chief Executive Officer and Non-Executive Chairman of the Board.

15. Individual Defendant Michael B. Targoff is, and has been at all relevant times, a director of Loral Space.

16. Individual Defendant John D. Harkey Jr. is, and has been at all relevant times, a director of Loral Space.

17. Individual Defendant Arthur L. Simon is, and has been at all relevant times, a director of Loral Space.

18. Individual Defendant John P. Stenbit is, and has been at all relevant times, a director of Loral Space.

19. Individual Defendant Janet T. Yeung is, and has been at all relevant times, a director of Loral Space.

20. The defendants identified in paragraphs 14 through 19 are collectively referred to

herein as the "Board" or the "Individual Defendants," and together with Loral Space, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. <u>Background of the Proposed Transaction</u>

21.     Loral Space is a satellite communications company. Loral holds a 62.7% economic interest Telesat Canada, a global operator of telecommunications and direct broadcast satellites used to distribute video entertainment programming and broadband data and to provide access to Internet services and other value-added communications services. Telesat is also developing a global constellation of low earth orbit satellites.

22.     Privately held and headquartered in Ottawa, Canada, with offices and facilities around the world, Telesat's principal shareholders are PSP Investment and Loral Space.

23.     On November 24, 2020, Loral Space authorized the announcement of the Proposed Transaction. The press release stated in relevant part as follows:

> **Loral Enters Into Agreement With PSP Investments And Telesat to Combine Loral And Telesat Into A New Public Company**
>
> NEW YORK – November 24, 2020 – Loral Space & Communications Inc. (NASDAQ:LORL) today announced that it has entered into a definitive agreement with Public Sector Pension Investment Board (PSP Investments) and Telesat Canada (Telesat) to combine Loral and Telesat into a new Canadian public company (New Telesat). Upon closing of the transaction, the stockholders in Loral, together with PSP Investments and certain current and former management shareholders of Telesat, will beneficially own all of the equity in New Telesat in approximately the same proportion as their current, indirect ownership in Telesat. Loral stockholders not affiliated with the funds managed by MHR Fund Management LLC (MHR Funds) will beneficially own 26.1% of the economic interests in New Telesat, with the MHR Funds, PSP Investments and management shareholders of Telesat beneficially owning the remaining 36.6%, 36.7% and 0.7%, respectively, of the economic interests in New Telesat (such percentages have been subjected to rounding adjustments). New Telesat shares will initially be listed on the Nasdaq Global Select Market, and New Telesat is also considering a listing for its shares on a Canadian stock exchange. New Telesat's governance provisions will

contain special features designed to maintain majority Canadian board and voting control.

In addition, Loral announced that its Board of Directors has declared a special dividend of $1.50 per share for an aggregate dividend of approximately $46.4 million. The dividend is payable on December 17, 2020 to holders of record of Loral voting and non-voting common stock as of the close of business on December 4, 2020.

Michael B. Targoff, Vice Chairman of Loral, said, "The transaction announced today reflects our long-standing efforts to maximize value for Loral stockholders. This transaction will consolidate all of the equity ownership of Telesat in the capital structure of New Telesat and will bring substantial benefits to Loral stockholders. In addition to affording Telesat the benefits of being a publicly traded Canadian company through New Telesat, Loral stockholders may elect to hold their interests directly in New Telesat, which should over time lead to improved liquidity. We are extremely pleased to have finally achieved this result." Commenting on the declaration of the special dividend, Mr. Targoff said, "At Loral, we have now fulfilled our stated intention to distribute substantially all of our cash to stockholders except for what is needed to fund working capital and certain other liabilities."

Dr. Mark H. Rachesky, Chairman of the Board of Directors of Loral, said, "The conclusion of this transaction represents an important milestone in our plan to deliver significant value to all Loral stockholders. Telesat is revolutionizing the provision of broadband internet connectivity worldwide by developing the most advanced constellation of low earth orbit (LEO) satellites and integrated terrestrial infrastructure ever conceived. The ownership structure of New Telesat will facilitate access to the capital markets for continued advancement of LEO, positioning New Telesat for substantial growth to further enhance shareholder value."

Regarding today's dividend declaration, Dr. Rachesky said, "The Loral Board has worked diligently over the last decade to maximize value for shareholders, first, by successfully turning around and selling our former satellite manufacturing business for over $1 billion and next by using the strong free cash flow generated at Telesat to enable Telesat to invest in its state-of-the-art satellite fleet and to pay extraordinary dividends. In addition to the significant equity interest in New Telesat that the Loral stockholders will collectively receive in the transaction, the Loral Board has delivered to stockholders cash dividends, including the dividend declared today, of over $49 per share, or an aggregate in excess of $1.5 billion."

The definitive agreement provides for Loral stockholders to receive, at their election and subject to the terms and conditions of the definitive agreement, shares of New Telesat or limited partnership units of a Canadian partnership (Telesat Partnership), which limited partnership units will be exchangeable by the holder for

shares of New Telesat. New Telesat will be the controlling general partner of Telesat Partnership. While the exchange of Loral stock for shares of New Telesat is anticipated to be taxable to U.S. stockholders to the extent of any gain, it is anticipated that Loral U.S. stockholders that elect to receive limited partnership units of Telesat Partnership in lieu of receiving shares of New Telesat will do so on a tax deferred basis. The limited partnership units of Telesat Partnership, while not transferable, will otherwise have substantially the same economic and voting rights as the shares of New Telesat. Loral stockholders who elect to receive limited partnership units of Telesat Partnership will, however, like all other holders of limited partnership units of Telesat Partnership, be required to hold their units for at least six months following closing of the transaction before they may exchange their limited partnership units of Telesat Partnership for shares of New Telesat. The exchange of limited partnership units of Telesat Partnership for shares of New Telesat is anticipated to be a taxable transaction to U.S. stockholders.

The definitive agreement also provides for PSP Investments to exchange substantially all of its interests in Telesat for limited partnership units of Telesat Partnership, with the balance of its interests in Telesat being exchanged for shares in New Telesat. Other holders of Telesat shares and derivatives have the option to exchange their equity or retain their direct interests in Telesat (the beneficial ownership percentages referred to in this press release assume that such shareholders will exchange their interests in Telesat for shares of New Telesat).

Loral and Telesat will also make certain cash payments to PSP Investments in connection with the transaction, including a payment of $7 million and a payment to adjust for the value of Loral's non-Telesat assets and liabilities at the time of the closing of the transaction.

The transaction, which is subject to customary closing conditions, including approval by Loral stockholders (as further described below) and certain regulatory approvals, is expected to close in the second or third quarter of 2021. As of November 23, 2020, there were outstanding 21,427,078 shares of Loral voting common stock, 9,505,673 shares of Loral non-voting common stock and 92,857 Loral restricted stock units.

Loral's Board of Directors has set a record date of November 30, 2020 for stockholders entitled to vote at the stockholder meeting to be held to approve the transaction (the stockholder meeting). The record date is subject to change based on the timing of the mailing of the proxy statement for the stockholder meeting. The MHR Funds have entered into an agreement to vote 30% of the shares of outstanding Loral voting common stock in favor of the transaction. In addition to the approval of the transaction by the holders of a majority of the outstanding Loral voting common stock, the transaction is also subject to approval (the Majority of the Unaffiliated Vote) by holders of the majority of the outstanding voting common stock held by Loral stockholders not affiliated with PSP Investments, the MHR Funds or other transaction participants (Unaffiliated Shares).

In addition, in connection with the transaction, the Loral Board of Directors has adopted a shareholder rights plan that would be triggered if a party (other than the MHR Funds) acquires or announces the intention to acquire shares of Loral voting common stock such that after giving effect to the acquisition the party would own more than 15% of the Unaffiliated Shares, or for those Loral stockholders (other than the MHR Funds) already over such 15% threshold, if such stockholder increases its ownership of such Unaffiliated Shares by 0.001% or more.  The shareholder rights plan will expire immediately upon the first to occur of receipt of the Majority of the Unaffiliated Vote, termination of the definitive transaction agreement and November 23, 2021.  The MHR Funds have also entered into a separate standstill agreement prohibiting the MHR Funds and their affiliates from acquiring more than an additional 6% of the outstanding shares of Loral voting common stock prior to the conclusion of the stockholder meeting.

An independent special committee of the Loral Board (the Special Committee) and the Loral Board received a fairness opinion from Loral's financial advisor, LionTree Advisors LLC (LionTree).  The Special Committee and the Loral Board each approved the transaction and determined it to be fair to the Loral stockholders not affiliated with the MHR Funds.  The definitive transaction agreement was also approved by the Board of Directors of each of PSP Investments and Telesat.

In connection with the transaction, LionTree and Credit Suisse Securities (USA) LLC acted as financial advisors, Willkie Farr & Gallagher LLP acted as legal counsel, McCarthy Tétrault LLP acted as Canadian legal counsel, and DLA Piper LLP acted as U.S. tax counsel, to Loral.  Cleary Gottlieb Steen & Hamilton LLP acted as legal counsel, and Goodmans LLP acted as Canadian legal counsel, to the Special Committee.

24. The Proposed Transaction may inordinately compensate Telesat and reward the Individual Defendants, at the expense of the Company's common stockholders. Therefore, it is imperative that stockholders receive the material information (discussed in detail below) that Defendants have omitted from the Registration Statement, which is necessary for stockholders to properly exercise their corporate suffrage rights and in order to cast an informed vote on the Proposed Transaction.

B. <u>The Registration Statement Omits Certain Material Information</u>

25. On April 26, 2021, Defendants authorized the filing of a materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants were obligated to

carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents or omits material information concerning, among other things, the companies' financial projections, as well as LionTree's financial analyses. This information is necessary for Loral Space's stockholders to make an informed decision on how to vote their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9.

26. ***First***, the Registration Statement omits Loral Space's financial projections, including cash flow projections and projected revenues, for all projections other than 12-Month Cash Spending. This omission is especially egregious as Telesat is a private company, and so stockholders have no means to evaluate the adequacy of the Exchange Ratio compared to their current holdings in the Company (which trades on a public market). Stockholders are instead being asked to dilute their position in the Company, and to accept a new stake in a pro forma entity containing Telesat. Indeed, without providing any projections, Company stockholders will receive a misleading picture about the projected returns from their new holdings in Telesat.

27. By example, if projections for Loral Space for 2021 were to reveal an increase in cash flows, stockholders would be more apt to vote against the merger, and inversely the same holds true. By choosing any and all of the Company's projections, the Board has chosen to blindfold stockholders to fundamental valuation information, and instead, left stockholders out in the dark with only market data for guidance. This is not a game of poker where a player must conceal his unexposed cards, the object of a Registration Statement is to put all one's cards on the table face-up. In this case only some of the cards were exposed—the others were concealed—and so must be disclosed.

28. ***Second***, the Registration Statement omits material information regarding the financial analyses performed by LionTree. With respect to LionTree's *Net Value Impact to Loral Stockholders (other than Excluded Parties) Analysis* for the Company, the Registration Statement fails to disclose: (i) the assumptions for utilizing a 7% to 8% discount rate when calculating the net present value of the Loral stockholders' *pro rata* portion of such incremental costs (net of tax impacts); (ii) the inputs and assumptions for calculating the payments to be made at the Closing under the Transaction Agreement based on Loral management's projections; (iii) the inputs and assumptions for the estimation of the undiscounted net value of the cash benefit of Loral's deferred tax assets; (iv) the assumptions for calculating a $3.971 million in one-time integration expenses; (v) the payments expected to be made in connection with the closing; and (vi) the reasons for assuming that a $11.290 million and $21.534 million range supports the financial fairness of the consideration to be received by such Loral stockholders.

29. Fairness opinions are fundamental to the M&A process and is ultimately what stockholders rely upon in their determination to vote for or against a transaction. Unfortunately, fairness opinions are also vulnerable to manipulation, which is why it is of the utmost important that stockholders have analyses available—such as those omitted here—to determine whether those metrics are reasonable, or whether they were unreasonably selected in order to obtain a finding of fairness. In valuing transactions such as these, it becomes all the more critical. As one highly respected professor explained in one of the most thorough law review articles regarding the fundamental flaws of fairness opinions, in a financial analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff

explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78. Therefore, in order for stockholders to determine how to vote they need access to the above information, and the omission of these metrics makes each financial analysis identified inherently misleading.

30.     ***Third***, the Registration Statement omits material information regarding Credit Suisse. Indeed, the Registration Statement completely omits what compensation Credit Suisse is expected to receive for its role in the Proposed Transaction. The Registration Statement further fails to disclose whether Credit Suisse has performed past services for Telesat or its affiliates, and if so, the timing and nature of the services and the amount of compensation received by Credit Suisse for providing the services. The omission of the above-referenced material information renders the Registration Statement false and misleading.

31.     ***Fourth***, the Registration Statement fails to accurately disclose the expected ownership structure in the post-merger company. Indeed, when applying the Exchange Ratio to the current holdings of Telesat's stockholders, the result is inconsistent and therefore materially misleading. Loral Space's stockholders have a clear and unambiguous interest in understanding how their shares are going to be treated following the merger and how their holdings will be

11

impacted. The failure to disclose this information, or clarify it such that it is not misleading, is a violation of the federal securities laws.

32. In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision concerning whether to vote his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violation of Section 14(a) of the Exchange Act)**

33. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

35. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

36. The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

37. Defendants have issued the Registration Statement with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding the valuation analyses performed by LionTree in support of its fairness opinion.

38. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's stockholders although they could have done so without extraordinary effort.

39. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that the LionTree reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses, as well as the fairness opinions and the assumptions made

and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review LionTree's analyses in connection with their receipt of the fairness opinions, question the LionTree as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

40.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

41.     Loral Space is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

42.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy

at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Loral Space within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Loral Space, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed

Transaction. They were thus directly involved in preparing this document.

47. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT III

**(Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)**

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they sought shareholder

action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

53. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving and/or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public stockholders.

54. The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights she or he possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

55. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: May 5, 2021                               **MONTEVERDE & ASSOCIATES PC**

<u>/s/ Juan E. Monteverde</u>
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*